# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| TONY R. FITZPATRICK, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )     Case No. 4:18CV1392 HEA |
| | ) |
| RICHARD GOETTLE, INC., | ) |
| | ) |
|     Defendant. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment [Doc. No. 39]. Plaintiff's appointed counsel filed a response to Defendant's Motion in which he states that because Plaintiff's claim is based on an invalid legal contention, appointed counsel cannot file a nonfrivolous response to the Motion for Summary Judgment. For the reasons set forth below, the Motion for Summary Judgment will be granted.

### Facts and Background

Defendant has, in accordance with the Court's Local Rules, submitted a Statement of Uncontroverted Material Facts. Plaintiff did not submit an answer to Defendant's Uncontroverted Material Facts. Local Rule 7-401(E) provides:

> Rule 7 - 4.01 Motions and Memoranda.
>
> (E) A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a

separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

The following facts, taken from Defendant's Statement of Uncontroverted Facts are therefore deemed admitted:

Defendant Richard Goettle, Inc. ("Defendant") performed construction work on the Ballpark Village project in downtown St. Louis in late 2017 and early 2018. Defendant's work at Ballpark Village involved drilling deep into the ground to place underground pillars below the surface. After Defendant drills the holes, it fills them with rebar cages and then with grout to form pillars. Once the pillars are set, Defendant's laborers utilize jackhammers that weigh thirty pounds or more to chip off the tops of the pillars in order to smooth them out – a process called "chipping." After the chipping is complete, Defendant's work is finished and other contractors build structures on top of the pillars.

The Laborers' Union Local 42 sent Plaintiff Tony Fitzpatrick ("Plaintiff") to work for Defendant on the Ballpark Village project in December 2017. When he arrived, Plaintiff filled out the "Preemployment Terms of Eligibility for Hire."

That form set forth some of the essential functions of the laborer position. One such essential function is that employees must be able to perform physical tasks such as lifting at least 50 pounds. At his deposition, Plaintiff described the laborer position as very physically demanding. He was required to lift and maneuver a concrete pump, maneuver large hoses that were 4-6 inches in diameter, manually rake spilled concrete, move iron rebar cages into place, and perform other duties that required lifting and other manual labor. Plaintiff explained that a laborer's job was not limited to just one or two of these duties; a laborer would need to be able to perform all of these job functions and would often perform several of them within any given day.

On March 19, 2018 Plaintiff alleges he sustained a workplace injury when a piece of mud fell from an auger and struck him in the visor of his helmet. Plaintiff did not report the injury on the date it occurred. When Plaintiff reported the injury the next day, Defendant placed him in contact with its occupational medicine doctor who began treating the Plaintiff.

At the time of Plaintiff's alleged injury, a phase of the project was nearing its end. As a result, Defendant had some extra, less-strenuous work that Plaintiff could perform while this project phase wound down. In order to help Plaintiff, Defendant allowed him to perform this work for a few days.

On March 27, while still working, Plaintiff saw Dr. Donald DeGrange. After examining Plaintiff, Dr. DeGrange determined Plaintiff could return to full duty without any restrictions.

On March 29, 2018, a phase of the project had finished, and Defendant had no work for any laborers. Because of this lack of work, Defendant laid off all of its laborers, including Plaintiff. Plaintiff does not dispute that the layoff occurred because Defendant had no work available at the time.

On April 2, 2018, after the layoff, Plaintiff went back to Dr. DeGrange complaining of symptoms from his injury. Dr. DeGrange treated Plaintiff and placed Plaintiff on a twenty-five-pound lifting restriction. Dr. DeGrange continued Plaintiff's lifting restriction when Plaintiff saw Dr. DeGrange again on April 11, 2018. Plaintiff testified at his deposition that while under the lifting restriction, he could not have performed his duties as a laborer for Defendant.

Around April 12, 2018, Defendant's work at Ballpark Village resumed. Defendant needed laborers to perform chipping work, which is the only work Defendant performed during that time period. Chipping is very physical work, and it is a two-person operation. One person uses a jackhammer with a blade attached to pound on the concrete pillars to chip the concrete off and make the pillars flat. The jackhammer weighs more than thirty pounds. While one person runs the jackhammer, another person stands nearby with a water hose to control the dust.

The person using the water hose is required to fill up a backpack sprayer with five gallons of water, then carry the backpack to the area where the chipping is performed. The backpack with water in it weighs at least 40 pounds.

Under his restrictions, Plaintiff could not perform either task in the chipping operation. Because of this, Defendant did not recall him when it recalled other laborers. Plaintiff's lifting restrictions lasted until September 2018. Defendant finished the last of its work in July 2018. By the time he no longer had a lifting restriction, Defendant's work at the Ballpark Village project had ended, so Plaintiff never worked for Defendant again. Plaintiff sought and received workers compensation benefits in order to ensure his income.

The Ballpark Village project had two sides: Block 100 and Block 400. Plaintiff primarily worked on Block 100. While he worked on Block 100, Plaintiff alleges he had a conflict with Defendant's manager Jon Conety. Plaintiff alleges that Conety did not like him because Plaintiff spoke up about safety issues in his role as a Union steward. On the day he alleges he was injured, Conety asked Plaintiff to move to the Block 400 side to fill in for a laborer who was off work. Plaintiff believes his assignment to work on Block 400 placed him in a dangerous work environment and that he became injured as a result. Plaintiff alleges that Conety's decision to move Plaintiff to Block 400, and place him in an allegedly unsafe environment, was actionable ADA retaliation. The only complaint Plaintiff

5

made while he worked for Defendant was a safety complaint about being asked to work too close to a drill auger. Plaintiff presented his complaint about safety to OSHA, and OSHA dismissed it. Plaintiff alleges that the retaliation occurred because of his safety complaint.

## Standard

"Summary judgment is proper where the evidence, when viewed in a light most favorable to the non-moving party, indicates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 654 (8th Cir. 2007); *see* Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Id.* "The basic inquiry is whether it is so one-sided that one party must prevail as a matter of law." *Diesel Machinery, Inc. v. B.R. Lee Industries, Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (internal quotation marks and citation omitted). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (citation omitted). Once the moving party has met its burden, "[t]he nonmovant must do more than simply

show that there is some metaphysical doubt as to the material facts and must come forward with specific facts showing that there is a genuine issue for trial." *Id*. (internal quotation marks and citation omitted).

To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003) (quoting *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)). The nonmoving party may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in his or her favor. *Wilson,* 62 F.3d 237, 241 (8th Cir. 1995). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson,* 477 U.S. 242 at 252; *Davidson & Associates v. Jung,* 422 F.3d 630, 638 (8th Cir. 2005). Summary Judgment will be granted when, viewing the evidence in the light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Samuels v. Kansas City Mo. Sch. Dist.,* 437 F.3d 797, 801 (8th Cir. 2006). "Mere allegations, unsupported by specific facts or evidence beyond the

nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin,* 483 F.3d 516, 526-7(8th Cir. 2007). "Simply referencing the complaint, or alleging that a fact is otherwise, is insufficient to show there is a genuine issue for trial." *Kountze ex rel. Hitchcock Foundation v. Gaines,* 2008 WL 2609197 at *3 (8th Cir. 2008).

## Discussion

The ADA makes it unlawful to discriminate against a "qualified individual with a disability" because of the disability. *Bahl v. Cty of Ramsey,* 695 F.3d 778, 83 (8th Cir. 2012). The ADA also prohibits retaliation, providing that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

In his Complaint, Plaintiff alleges that Defendant discriminated and retaliated against Plaintiff in violation of the ADA first by threatening to terminate him for wishing to report a job injury, then by laying him off based on his injury, and later by refusing to rehire him based on his medical status. Defendant argues that Plaintiff's discrimination claim fails as a matter of law because Plaintiff is not a qualified individual with a disability under the ADA and that Plaintiff's retaliation claim fails because (1) no causal connection can exist where the alleged

8

retaliatory action occurred before the alleged disability, (2) Plaintiff did not engage in protected conduct under the ADA, and (3) Plaintiff cannot show that retaliation was the but-for cause of Defendant's refusal to rehire him.

Plaintiff's appointed counsel also notes that "Plaintiff's claim is based upon the fact/law that defendant has a duty to create a job for him after he was injured on the jobsite" and that "we cannot find law that supports such a position." Indeed, as discussed below, the Court agrees that Plaintiff's belief about a right to continued employment under the ADA is fatally flawed.

Discrimination

In order to establish disability discrimination under the ADA, Plaintiff must first show that he "(1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) suffered an adverse employment action because of [his] disability." *Walz v. Ameriprise Fin., Inc.,* 779 F.3d 842, 845 (8th Cir. 2015). A qualified individual under the ADA is an employee who must "(1) possess the requisite skill, education, experience, and training for [the] position, and (2) be able to perform the essential job functions, with or without reasonable accommodation." *Scruggs v. Pulaski County, Ark.*, 817 F.3d 1087, 1092 (8th Cir. 2016) (citing *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013) (quotation omitted)). Essential job functions are those considered fundamental to the position. *Id.* The Eighth Circuit Court of Appeals has explained:

> A job function may be essential if the reason the position exists is to perform that function, or if a limited number of employees are available among whom the performance of the job function can be distributed. In determining whether a job function is essential, we consider evidence including what functions the employer thinks are essential, written job descriptions, how much time an employee spends on the job performing the function, the consequences of not having the employee perform the function, and whether other current employees in similar jobs perform the function.

*Id.* (citations omitted).

Here, an essential job function for Defendant's laborers was lifting more than 25 pounds at a time. It is undisputed that the chipping labor for which Plaintiff was not rehired required lifting of 25 pounds or more and that no laborer positions that did not require lifting 25 pounds or more existed during the period when Plaintiff was restricted to lifting 25 pounds. Plaintiff testified that due to his injury, he could not perform the laborer job that he had been working at the time of his injury. Therefore, there is no dispute that Plaintiff could not perform the essential job functions, with or without reasonable accommodation.

Plaintiff's contention that he was entitled to continue working for Defendant in a the "light work" position that Defendant kept him on after his injury is unsupported by Eighth Circuit law. "For established public policy reasons, '[a]n employer does not concede that a job function is non-essential simply by voluntarily assuming the limited burden associated with a temporary accommodation, nor thereby acknowledge that the burden associated with a

permanent accommodation would not be unduly onerous.'" *Minnihan v. Mediacom Commc'ns Corp.*, 779 F.3d 803, 812 (8th Cir. 2015) (quoting *Rehrs v. Iams Co.,* 486 F.3d 353, 358 (8th Cir.2007)). "[T]o find otherwise would unacceptably punish employers from doing more than the ADA requires, and might discourage such an undertaking on the part of the employers." *Id.* Accordingly, Plaintiff was not a qualified employee under the ADA and his discrimination claim fails as a matter of law.

Retaliation

"A *prima facie* case of retaliation requires the plaintiff to show (1) [he] engaged in statutorily protected activity; (2) [he] suffered an adverse employment action; and (3) a causal connection between the two." *Moses v. Dassault Falcon Jet-Wilmington Corp*, 894 F.3d 911 (8th Cir. 2018) (citing *Oehmke v. Medtronic*, Inc., 844 F.3d 748, 758 (8th Cir. 2016) (alterations in original)). An ADA retaliation claim "requires a but-for causal connection between the employee's assertion of [his] ADA rights and an adverse action by the employer." *Id.*

Defendant sets forth three independent arguments as to why it is entitled to summary judgment on Plaintiff's ADA retaliation claims. Defendant's argument that Plaintiff did not engage in protected conduct under the ADA is the most persuasive and sufficiently warrants summary judgment on Plaintiff's retaliation claim. As previously stated, the ADA protects from retaliation an individual who

"has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). Plaintiff's Complaint alleges that he was retaliated against due to "previous disputes between Plaintiff and [Defendant's] superintendent Con[et]y regarding labor and safety practices" and also due to Plaintiff's efforts to file an injury report relating to his injury on the job. Neither of these actions are protected activity under the ADA. Workplace safety and the reporting of on-the-job injuries are not addressed by the ADA. They are addressed by other state and federal legislation, In fact, it is undisputed that Plaintiff sought redress for his safety complaint through the Occupational Health and Safety Administration (OSHA) and for his on-the-job injury through Defendant's worker's compensation insurance. The purpose of the ADA is to address and eliminate discrimination against individuals with disabilities. 42 U.S.C. § 12101(b). Plaintiff's actions, which do not pertain to disability discrimination, are not protected activity for the purpose of an ADA retaliation claim.

Because the Court finds that Plaintiff did not engage in protected conduct under the ADA, it does not to reach Defendant's alternative arguments in support of summary judgment as to Plaintiff's ADA retaliation claim. Defendant is entitled to summary judgment as to Plaintiff's ADA retaliation claim.

## Conclusion

Viewing the record in the light most favorable to Plaintiff, no genuine disputes of material fact remain for trial, and judgment as a matter of law will be entered in favor of Defendant.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Doc. No. 39] is **GRANTED**.

A separate judgment in accordance with this Opinion, Memorandum, and Order is entered this same date.

Dated this 2nd day of March, 2020.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE